SCOTT *v.* MCCRAW, PERKINS & WEBBER COMPANY.

Opinion delivered April 9, 1917.

1. APPEAL AND ERROR—ADMISSION OF TESTIMONY—FAILURE TO OBJECT BELOW.—Where no objection to the admission of evidence was made in the court below, its competency will not be reviewed on appeal.

2. FRAUDULENT CONVEYANCES—LIABILITY OF GRANTEE—SUFFICIENCY OF THE EVIDENCE.—A finding of the chancellor, that a wife fraudulently received money from her husband, in order to defraud his

creditors, and that she received the benefit thereof, will not be sustained where it appeared that she was mentally feeble, and that the husband used the funds for his own purposes.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*John W. Wade,* for appellant.

1. The law does not authorize the charging of appellant's separate estate because of the influence and control of her husband. 95 U. S. 3; 97 *Id.* 304; 120 *Id.* 78; 154 *Id.* 631; 97 Kans. 279; 92 N. W. 923.

2. The mortgagor justly owed her more than the amount of these deposits. 108 N. Y. Sup. 54. Appellees never had any lien on or claim against her property and lost nothing. 35 Ala. 483; 82 *Id.* 503; 17 B. Mon. (Ky.) 268; 93 Va. 341.

3. Appellant was not a party to any fraud. 20 Cyc. 465.

4. None of this property, nor its proceeds, was ever under her control, and she was not liable. 20 Cyc. 633; 58 N. H. 529; 13 N. Y. Supp. 231; 2 P. & H. (Va.) 532.

5. Nor did she or her estate receive any benefit from this property or its proceeds.

6. Appellant was incurably insane. 40 Cyc. 1007. Insanity revokes all agencies. 109 N. C. 508; 21 Cyc. 1424.

7. The decree is contrary to the great preponderance of the testimony. 119 Ark. 492; 109 *Id.* 151.

*Riddick & Dobyns,* for appellees.

1. Appellant can be held personally liable. 119 Ark. 492. A fraudulent grantee is liable to account for property as a trustee for creditors. 12 R. C. L. 645-6; Wait on Fraud. Conv., sec. 117 *et seq.;* 21 Ark. 22; 52 *Id.* 458; 115 Ga. 385; Wait, Fraud. Conv. (3 ed.), sec. 180.

2. The proceeds went into appellant's possession and her estate received it. *Supra.*

3. She was not insane. 14 R. C. L. 622-623; 26 Ark. 334; 54 *Id.* 588.

4. Former decrees are not conclusive. 81 Fed. 73; 94 U. S. 608. They conclude only as to such matters as were in fact raised by the pleadings. Appellant's estate received the funds and the decree of the chancellor is sustained by the evidence and should be affirmed.

SMITH, J. Dr. S. A. Scott was, for several years, a customer of appellees, who are commission merchants in the city of Memphis, and, during that time, he borrowed a large amount of money from this firm, which was repaid in part by the shipment of cotton. A dispute which arose over the balance due led to the litigation which is reported in 119 Ark. 133.

Doctor Scott had control of his wife's property, and sold a number of lots belonging to her, and invested portions of the proceeds of these sales in other property, the title to which was taken in his own name. He made other uses of other portions of this property. Finally he executed a deed of trust to certain property for the alleged purpose of securing and repaying the money he had used which belonged to his wife. This conveyance was attacked upon the ground that it had been executed in fraud of creditors, and the chancery court canceled it upon that ground. The decree appealed from in that case was affirmed by us in an opinion appearing in 119 Ark. p. 492. Property there uncovered was sold, but the proceeds of the sale proved insufficient to discharge the original judgment against Doctor Scott, and this suit was brought against Mrs. M. Scott, the wife of Doctor Scott, upon the theory that Doctor Scott had sold certain portions of the property so fraudulently conveyed, and had placed the proceeds of such sales to the credit of Mrs. Scott in banks, where accounts were carried in her name. Such accounts were kept with the Bank of Commerce, and the England National Bank, in Little Rock, and with the Merchants & Planters Bank of Eudora.

It appears, from the testimony of Doctor Scott, taken both in this and in the former litigation, that he placed in these banks proceeds of the sale of property covered

by the deed of trust which was adjudged to have been executed in fraud of creditors. It is said, therefore, that, inasmuch as Mrs. Scott has derived the benefit of the proceeds of the sale of the property so fraudulently conveyed to her, she is liable to the creditors of Doctor Scott to the extent of the money so received.

Doctor Scott was examined and cross-examined at great length, without objection, by both court and counsel, and the court found that Mrs. Scott had received enough of the proceeds of the sales of land uncovered in the second suit to pay the balance due on the original judgment, and adjudged that she held said money as trustee for the benefit of the judgment plaintiff, and a decree was rendered against her separate estate upon that theory, and this appeal has been prosecuted to reverse that decree.

Mrs. Scott's defense was made by a guardian who was appointed upon the allegation made in her behalf that she was an insane person. It is insisted in her behalf that she is insane, and that she had no knowledge of, nor part in, the transactions which have been carried on in her name. Physicians of eminence testified that Mrs. Scott is now, and for a number of years past has been, insane, and there is other evidence strongly corroborating this expert testimony. At any rate, it is undisputed that she is a confirmed invalid, and has been for many years, and that, as a result of this illness, she has but little mentality, and we are left in much doubt, under the evidence in this case, whether she has sufficient intelligence to comprehend the purpose and effect of her actions. The notary public, who took her acknowledgments to the conveyances executed by her, stated that she answered intelligently the question he asked her each time when the acknowledgments were taken. However, he said he had no conversation with her on any of these occasions, and he testified that he did not have an opinion as to her sanity, for he thought nothing about this question when called upon to take the acknowledgments.

The officers of the banks where the deposits were made testified that they did not know Mrs. Scott, and could not say whether there was such a person, as she made none of the deposits, and never drew a check against the accounts. It is undisputed that, while the accounts were opened in the name of M. Scott, the deposits were made by Doctor Scott, and all the checks against the accounts were drawn by him. These checks were offered in evidence, and Doctor Scott explained the purpose for which the checks were drawn where that purpose did not appear from the face of the checks themselves. A consideration of this evidence makes it clear that these funds were not withdrawn for the use or benefit of Mrs. Scott, and we are even more certain that she knew nothing whatever about any of these transactions. It appears, from these checks, and the evidence explaining them, that the funds they represented were used by Doctor Scott in various enterprises in which he was engaged, and all for his own purposes and uses.

It is said, however, that this proof is made by Doctor Scott, and that his evidence is incompetent, inasmuch as he could not be the agent of his wife in the misappropriation of her funds, and that, if this testimony is excluded, there is no evidence to show the uses made of a sufficiently large amount of these funds to discharge appellee's debt; and that, in the absence of such evidence, the presumption must be indulged that funds deposited in the name of Mrs. Scott were, in fact, applied for her benefit. It appears, however, that no objection to the testimony of Doctor Scott was offered in the court below, and that much of this evidence was brought out by appellees in the examination of Doctor Scott as a witness for the purpose of explaining these transactions; that Doctor Scott gave testimony tending to establish a necessary part of appellee's case, and no objection to the competency of other portions of his evidence having been made in the court below, such objection can not now be considered here. *Fidelity-Phenix Fire Ins. Co.* v. *Friedman,* 117 Ark. 80.

There is no inherent incompetency in this testimony, and no objection was made to the competency of the witness.

No contention is made in this case that credit was extended to Doctor.Scott upon any mistaken assumption of ownership of Mrs. Scott's separate property. The theory upon which the case was tried, and upon which the decree was based, is that Mrs. Scott was a fraudulent grantee, and had been the beneficiary of the sales of property so fraudulently conveyed to her. We think, however, that the finding to this effect is clearly against the preponderance of the evidence. There has been a sale under the directions of the decree upon the second appeal in this litigation, in which the conveyance from Doctor Scott to his wife was held to have been made in fraud of his creditors, and, at this sale, the property so fraudulently conveyed, which was then on hand, was sold; the proceeds of the said property previously sold form the subject-matter of this litigation; and we are of opinion that Mrs. Scott had no information in regard to these transactions and derived no benefit from them. Doctor Scott explains his failure to make, in the second suit, some of the explanations made here by saying that he was then unwilling to disclose his wife's mental condition, and that she never, in fact, knew anything of the former litigation, and that he directed the sheriff to make return of service of the summons in that case when the summons had only been delivered to him, and that he did this because of his apprehension of the disquieting effect the service of process would have upon his wife. He did not tell the sheriff of her condition, however, and made no issue as to her sanity in that case, and he testified that he does so now only because of the attempt here being made to subject her individual estate to the payment of his personal obligations. However that may be, and whatever his motive may have been, for making now a defense which he failed to make in the former case, we are of opinion that the testimony does not show that Mrs. Scott received the

benefit of the sale of lands in question, or that she had any knowledge of the transaction in regard thereto, and the decree of the court below will, therefore, be reversed.

McCULLOCH, C. J., disqualified and not participating.